

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| | § |
| vs. | § CRIMINAL ACTION NO.: 3:17-00640-MGL-4 |
| | § |
| COURTNEY HENRY, | § |
| Defendant. | § |

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE**

### I.     INTRODUCTION

Pending before the Court is Defendant Courtney Henry's (Henry) pro se motion to reduce his sentence due to COVID-19, his health, and family circumstances. Having carefully considered the motion, the response, the reply, the record, and the applicable law, it is the judgment of the Court Henry's motion to reduce his sentence will be denied.

### II.     FACTUAL AND PROCEDURAL HISTORY

Henry was convicted of conspiracy to distribute marijuana in violation of 21 U.S.C. §§ 841 (a)(1), 841(b)(1)(D), and 846 (marijuana count) and possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 942 (c)(1)(A) (firearm count). On July 14, 2021, the Court sentenced him to a term of sixty months of imprisonment, consisting of time served on the marijuana count (about two months) and sixty months on the firearm count, to be served consecutively, followed by a three-year term of supervised release.

Henry is currently housed at United States Penitentiary, Atlanta (USP Atlanta), with a projected release date of September 24, 2025.

Henry alleges he has several medical conditions, including asthma, a high body mass index, a history of smoking, sleep apnea, depression, anxiety, tinnitus, chest pain, scoliosis, chest pain, Gastroesophageal Reflux Disease (GERD), hiatal hernia procedure complications, chronic nerve pain, a knee injury, and surgical issues, which he argues increase his chances of contracting COVID-19 and suffering from complications.  He also contends he takes medication that suppresses his immune system, rendering him vulnerable to COVID-19.

According to the link provided by the government, at USP Atlanta, 241 staff members and 964 inmates have been vaccinated, and the Bureau of Prisons (BOP) continues to provide access to vaccines as needed, including eligibility for COVID-19 booster shots.  *See COVID-19 Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus (last visited Oct. 26, 2022).  There are currently no active inmate COVID-19 cases at USP Atlanta, but it is classified as a Level 2 facility, meaning it has "[m]oderate" COVID-19 modifications.  *Id.*

Henry himself refused the vaccine, claiming "the unknowns about the controversial vaccines cause him to choose not to risk being vaccinated."  Motion at 18.  Additionally, Henry contracted and recovered from COVID-19.

The Clerk's Office docketed Henry's motion on May 2, 2022.  The government responded. The Court, having been fully briefed on the relevant issues, will now adjudicate the motion.

### III. LEGAL STANDARD

Upon a defendant's motion, a district court may reduce a term of imprisonment if the defendant has exhausted his administrative remedies and "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A)(i), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185-86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" exist to support a sentence reduction. *Id.* at 185 (quoting § 3582(c)(1)(A)(i)).

Second, the court considers whether "a [sentence] reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Because there is "as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), . . . district courts are empowered to consider *any* extraordinary and compelling reason for release that a defendant might raise." *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) (internal alterations and citations omitted).

Finally, even if the court finds extraordinary and compelling reasons to support relief, it retains the discretion to deny a defendant's motion after balancing the applicable 18 U.S.C. § 3553(a) factors. *High*, 997 F.3d at 186.

### IV. DISCUSSION AND ANALYSIS

As an initial matter, Henry has exhausted his administrative remedies. The Court thus turns to the merits of his motion.

### A. Whether Henry presents extraordinary and compelling reasons due to COVID-19 warranting a reduction of his sentence under 18 U.S.C. § 3582(c)

Henry posits the COVID-19 pandemic, his medical conditions and past complications, increased risk in his facility, and family circumstances together constitute extraordinary and compelling reasons for his release.  The government, however, points to the BOP's COVID-19 response that help mitigate Henry's personal risk to contend that compassionate release is unwarranted.  It also insists Henry's family circumstances fail to provide extraordinary and compelling circumstances.

"[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."  *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021).  As the government avouches, the BOP has administered over 325,000 doses of the vaccine.  Inoculation greatly reduces the likelihood of severe illness and death from COVID-19.  Yet, Henry has refused the vaccine.

"[A] prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release. The risk is self-incurred."  *Id*.  The Court is troubled, however, by Henry's allegation that those inmates who initially refuse the vaccine and then change their minds are unable to receive the vaccine.

But, even if this is true, Henry appears to have made no argument that he would avail himself of the vaccine if he could.  He seems to cling steadfast to his refusal, despite the evidence of the safety of the vaccine.  *See* Reply at 9 ("[T]he sole reason Mr. Henry declined to take the vaccine was due to his already extremely vulnerable and compromising health conditions"); *see also COVID-19 Risks and Vaccine Information for Older Adults*, Centers for Disease Control and Prevention (CDC), https://www.cdc.gov/aging/covid19/covid19-older-adults.html (last accessed

4

Sept. 21, 2022) ("Get vaccinated as soon as possible. COVID-19 vaccines are effective in preventing COVID-19 and are recommended for everyone 12 years of age and older.") (cited by the government). Because Henry has failed to allege a legitimate reason for remaining unvaccinated, COVID-19 alone fails to rise to the level of an extraordinary and compelling reason for his release.

Nor do any other factors, combined with the risk of COVID-19, rise to extraordinary and compelling circumstances. Even if medical conditions elevate his risk for COVID-19 infection, Henry has failed to show the vaccine would not reduce any particular susceptibility to serious illness or death from contracting the virus. *See United States v. Hargrove*, 30 F.4th 189, 198 (4th Cir. 2022) (holding district court exercised proper discretion by denying compassionate release because, under the totality of the circumstances, defendant's health conditions, which might cause increased risk of serious illness or death from COVID-19, failed to present extraordinary or compelling reasons); *see also Rates of COVID-19 Cases and Deaths by Vaccination Status*, CDC, https://covid.cdc.gov/covid-datatracker/#rates-by-vaccine-status (last accessed September 15, 2022) (showing vaccination reduces risk of death or serious illness upon contracting COVID-19) (cited by the government).

Moreover, there are currently no active inmate cases at USP Atlanta. And, as noted above, almost a thousand inmates at USP Atlanta have been vaccinated, lowering the risk of spread and severe illness even in the absence of complete social distancing. The Court thus identifies no particularized risk to Henry based on his placement at USP Atlanta. And, although the Court empathizes with the increased amount of time spent on lockdown because of the pandemic, this is common to all those incarcerated, and thus unfortunately is unextraordinary to Henry.

The Court also notes that it sentenced Henry in July 2021, about a year and half into the COVID-19.  The Court therefore understood its impact when determining his sentence.  Although the pandemic is ever-evolving, the circumstances have failed to change to such a degree to create extraordinary and compelling circumstances for Henry.

Further, beyond the crisis of COVID-19, Henry asserts USP Atlanta is "the most disgusting, deteriorating BOP facility."  Reply at 12.  He describes holes in walls; mildew on ceilings; broken and backed up plumbing and sinks; limited opportunities to bathe; broken phones, televisions, and computers; poor quality and unsanitary food; an insect- and rodent-infested mess hall; and unresponsiveness to medical needs.  Henry avouches the warden of his facility has failed to make improvements in response to complaints.

The Court is, to say the least, troubled by these accusations.  But, the Court can do little with these bare assertions, unsupported by evidence.  It understands the difficult and tenuous position in which this places Henry, as the very nature of some of these allegations render collecting evidence difficult.  Nevertheless, the Court determines Henry has failed to show extraordinary and compelling circumstances at this time.  But, if true, these allegations may give rise to a civil claim under 42 U.S.C. § 1983 for constitutional violations.

Finally, Henry's family circumstances fail to create extraordinary and compelling circumstances.  He asks for release to take care of his widowed sixty-six-year-old mother, who he says is suffering from failing health conditions and lives alone.  He contends he is the only person able to serve as caretaker.  But Henry's argument is unavailing.

First, within his briefing, he contradicts himself.  He argues alternatively that he will be deported to Canada upon release, and thus presents no danger to American society, and that he must care for his mother, who lives in the United States.

6

The Court does not pretend to know the immigration consequences to Henry upon his release. This is outside its purview. But, based on the vague attestation of his mother's ailing health, without further detail, and considering the uncertainty that his release will enable him to provide her care, the Court determines this argument fails.

Altogether, although the risk of an inmate contracting COVID-19 and suffering adverse health consequences is certainly still present, it has been greatly reduced by BOP's efforts and the prevalence of the vaccine.

Accordingly, Henry has failed to present extraordinary or compelling reasons for a sentence reduction.

### B.     *Whether the Section 3553(a) factors weigh in favor of release*

Even if the Court determined extraordinary and compelling circumstances exist in this case, however, analysis of the Section 3553(a) factors would preclude release. *See* 18 U.S.C. § 3582(c)(1)(A) (the Court may grant compassionate release only "after considering the factors set forth in section 3553(a) to the extent that they are applicable[.]"). These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) "the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes by the defendant;
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for [the offense] . . .
> (5) any pertinent policy statement . . . issued by the Sentencing Commission . . . [;]
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

7

18 U.S.C. § 3553(a).

Henry pled guilty to conspiracy to distribute marijuana and possessing a firearm in furtherance of a drug trafficking crime, serious offenses. In his reply, Henry makes several arguments that the Court should reconsider the gravity of his conviction.

First, he insists he possessed the firearm for protection of himself and his family and that he "argued strenuously for the Government to dismiss the 924(c) charge." Reply at 11. But, the Court must consider the plea agreement Henry signed. In that plea agreement, he admitted to possessing the firearm in furtherance of his drug trafficking crime. Additionally, the Court considered this argument at sentencing.

Second, Henry also contends his marijuana offense "is no longer considered a serious offense[.]" Motion at 17. Even if the public attitude toward marijuana is shifting, it is still illegal to possess and distribute at the federal level. Congress, not the Court, must move to reflect these changes through legislation. *Cf. Bousley v. United States*, 523 U.S. 614, 620–21 (1998) ("[U]nder our federal system it is only Congress, and not the courts, which can make conduct criminal"). Moreover, the majority of Henry's sentence was for his firearm count.

Accordingly, neither argument prevails. As the Court determined at the time of sentencing, the offenses of conviction, particularly the firearm count, are serious.

Additionally, Henry has a criminal history, albeit relatively inextensive. The Court considered the lack of extensive criminal history at the time of sentencing. Although Henry states he has a position as a Service Manager available to him upon his release, which the Court finds commendable, this alone fails to change the Court's analysis under the Section 3553(a) factors. Further, it is unclear whether that position is in the United States or Canada, and thus it may be unavailable to Henry.

Finally, Henry argues the Court should consider the lack of available programming and vocational training due to COVID-19. The Court certainly finds these circumstances in prisons concerning. Although necessary to quell the spread of the disease, the lack of training undermines the rehabilitative goals espoused by the Section 3553(a) factors. Nonetheless, these realities existed at sentencing and fail to shift the analysis.

Overall, Henry's approximately sixty-two-month sentence is not of an "unusual length" creating a "gross disparity[.]" *McCoy*, 981 F.3d at 285 (internal quotation omitted). In fact, it is below Henry's guideline sentence of eighty-seven months. Thus, on balance, the Court determines the 3553(a) factors weigh against a reduced sentence.

## V.     CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court Henry's motion to reduce his sentence, ECF No. 913, is **DENIED**.

**IT IS SO ORDERED.**

Signed this 27th day of October 2022, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE
